UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x

AUSTIN KING,                                      Index No.:

      Plaintiff,

   -against-                                    **COMPLAINT AND**
                                                                           **DEMAND FOR JURY**

NISSAN 112 SALES CORP and
NISSAN MOTOR ACCEPTACE
CORPORATION,

      Defendants.
------------------------------------------x

    As and for his complaint, in the above-captioned action, plaintiff AUSTIN KING (Plaintiff"), by and through his attorneys Kasell Law Firm, alleges as follows:

## PARTIES

1. At all times mentioned herein Plaintiff was and is an individual residing at 1065 E. 104TH Street, Brooklyn, New York 11236.

2. Upon information and belief, at all times herein mentioned, Defendant NISSAN 112 SALES CORP ("Nissan 112") was and is a New York Corporation with its principal place of business in the County of Suffolk at 730 Route 112 Patchogue, New York 11772.

3. Defendant is engaged in the business of selling and servicing new motor vehicles. Defendant is also engaged in the financing and arranging of financing of motor vehicles that it sells to the public.

4. Upon information and belief, Defendant NISSAN MOTOR ACCEPTANCE CORPORATION ("NMAC"), is a foreign corporation authorized to transact business in the State of New York. NMAC is engaged in the business of financing

and accepting assignment of automobile finance contracts.

## JURISDICTION AND VENUE

5. Jurisdiction is premised on 15 U. S. C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

6. Plaintiff instituted this action or actual damages, statutory damages, attorneys' fees and costs against Defendant for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* (hereinafter "TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. § 1026, promulgated pursuant thereto, and for related and unrelated violations of New York General Business Law § 349.

7. Venue in this District is proper in that the conduct complained of occurred here.

## STATUTORY FRAMEWORK
## TILA

8. The Truth in Lending Act ("TILA") is a federal law designed to protect consumers in credit transactions by requiring clear and conspicuous disclosure of key terms of the lending agreement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended, 15 USC §§ 1601 *et seq*. The regulations implementing the statute, which are known as an as "Regulation Z" are codified at 12 C.F.R. § 1026. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

9. The retail installment sales contract ("RISC") is the document that a consumer is supposed to receive in which the requisite TILA disclosures are to be made.

## BACKGROUND

10. On or about August 17, 2013, Plaintiff went to Defendant to purchase a new vehicle.

11. Plaintiff did not bring with him, nor did he intend to make any down-payment for his purchase.

12. Plaintiff selected and purchased a new 2013 Nissan Maxima from Defendant with vehicle identification number 1N4AA5AP5DC819073 (the "Vehicle") for valuable consideration.  At that time Plaintiff was given a Retail Installment Sales Contract ("RISC"). A copy of the August 17, 2013 RISC is attached as **Exhibit A**.

13. After realizing that the deal for the Vehicle as reflected in the paperwork Plaintiff had been given did not match what Plaintiff had discussed with the dealer, Plaintiff contacted NMAC.

14. NMAC sent Plaintiff a copy of the RISC that it had.  Plaintiff was stunned to see that it was a completely different document than what Nissan 112 had given to him. A copy of the August 18, 2013 RISC sent to Plaintiff by NMAC is attached as **Exhibit B**.

15. First of all, NMAC's copy of the RISC has a date of August 18, 2013 when the RISC given to Plaintiff has a date of August 17, 2013.

16. In a first TILA violation, a closer inspection of the documents revealed that Nissan 112 falsely reported that Plaintiff had made a down-payment of $4,350 on both RISCs when in fact, Plaintiff had made no down-payment whatsoever.

17. Upon information and belief, this was done so that Nissan 112 could improve the loan-to-value ratio on the deal and, having inflated the purchase price, could simply steal the additional funds borrowed for the purchase of the Vehicle when

the Vehicle just didn't cost as much as Nissan 112 claimed. This inflation of the purchase price is a second violation of TILA.

18. In a third TILA violation, by falsely stating the purchase price of the Vehicle, Nissan 112 caused the amount of tax for Plaintiff's purchase to be improperly inflated.

19. In a fourth violation of TILA, Nissan 112 did not properly disclose amounts paid to others on Plaintiff's behalf. The two RISCs show different amounts for a number of items. Including the fact that the total of the amounts paid to others on Plaintiff's behalf on the August 17, 2013 RISC is $6,417.33 but that in the August 18, 2013 RISC provided by NMAC, Nissan 112 only showed $3,942.33 in amounts paid to others on his behalf.

20. Suspecting that he had been the victim of fraud and other legal violations, Plaintiff retained the services of a lawyer.

21. On or about May 19, 2014, Plaintiff wrote, through counsel to Nissan 112 to complain about its conduct and to try to resolve the matter. A copy of Plaintiff's May 19, 2014 letter is attached as Exhibit C.

22. In response to Plaintiff's allegations, Nissan 112 provided a copy of its VIN/ZIP Incentive Lookup. A copy of Nissan 112's VIN/ZIP Incentive Lookup is attached as **Exhibit D**.

23. Purportedly, as shown by the VIN/ZIP Incentive Lookup, Nissan 112 took a down-payment of $1,500 from Plaintiff with the remainder of the down-payment composed of rebates and incentives. But as stated above, Plaintiff did not make any down-payment towards the Vehicle purchase.

## COUNT I

## MULTIPLE VIOLATIONS OF THE TRUTH IN LENDING ACT

24. Plaintiff repeats the allegations set forth in paragraphs 1 - 23 as if fully set forth at length herein.

25. At all times relevant hereto, Nissan 112 regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and are the persons to whom the transaction which is the subject of this action is initially payable, making Nissan 112 a creditor within the meaning of TILA , 15 U.S.C. § 1602 (f) and Regulation Z § 1026.2(a)(17).

26. Plaintiff and Nissan 112 entered into a consumer credit transaction that was memorialized in an agreement covered by the TILA as purported by the terms memorialized in the RISC(s) annexed as Exhibits "A" and "B".

27. Under the transaction, Nissan 112 failed to deliver all material disclosures required by the TILA and Regulation Z in that Nissan 112 failed to accurately disclose the "total sale price" in violation of Regulation Z § 1026.18(j).

28. By falsely reporting the amount of the down-payment, Nissan 112 caused Plaintiff to incur a greater tax liability for the purchase of the Vehicle because the purchase price was at least $1,500 higher than the Vehicle's actual purchase price.

29. Further, the additional sales tax on the Vehicle was improperly included as part of the amount financed, resulting in the disclosures in the RISC being inaccurate.

30. Nissan 112 also breached Regulation Z § 1026.18(c)(1)(iii) and 15 U.S.C. § 1638(a)(1)(2)(B)(iii) by not properly disclosing the amounts paid to others on Plaintiff's behalf.

31. Plaintiff relied on these inaccurate disclosures to his detriment.

32. Plaintiff is therefore entitled to actual damages, statutory damages and punitive damages.

33. Plaintiff is also entitled to reasonable attorneys' fees and expenses.

## COUNT II
## VIOLATION OF GENERAL BUSINESS LAW § 349

34. Plaintiff repeats the allegations set forth in paragraphs 1 - 34 as if fully set forth at length herein.

35. New York General Business Law § 349 prohibits the use of deceptive or unfair practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

36. The conduct alleged herein, and the sale and financing of vehicles is consumer oriented conduct as it has the demonstrated potential to be repeated with other consumers.

37. Nissan 112 engaged in deceptive acts and practices that damaged Plaintiff by misrepresenting the amount of Plaintiff's down-payment.

38. Nissan 112 also engaged in deceptive acts and practices that damaged Plaintiff by misrepresenting "the amounts paid to others on your behalf" in connection with the RISC that Plaintiff executed.

39. Nissan 112's actions and practices were misleading in a material respect and Plaintiff has been damaged as a result.

40. Plaintiff hereby demands that all attorneys' fees, costs, and other fees of this action be borne by Nissan 112 and that the Court award Plaintiff's actual damages, as well as punitive damages in an amount to be determined at trial.

## COUNT III
## LIABILITY OF NMAC

41. Plaintiff repeats the allegations set forth in paragraphs 1-41 as if fully set forth at length herein. This Count is brought against NMAC only.

42. Federal Law (16 C.F.R. part 433) provides all retail installment contracts contain the following provision:

> **NOTICE: ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

43. NMAC is the holders of the consumer credit contract(s) memorialized by the RISCs for the purchase of Plaintiff's Vehicle. NMAC is bound by the terms quoted in Paragraph 67 above, subjecting them to all claims and defenses which Plaintiff has asserted against Nissan 112.

44. The Vehicle constitutes the "good" obtained with the proceeds of the RISC.

45. Nissan 112 and NMAC sold the Vehicle, which constitutes the good obtained with the proceeds of the loan.

Consequently, NMAC is subject to all claims and defenses that Plaintiff could assert against Nissan 112.

WHEREFORE plaintiff is entitled to:

a. Twice the amount of the finance charge as specified by 15 U.S.C. § 1640 (a)(2)(A)(i);

b. Statutory damages of not less than $400 nor more than $4,000 pursuant to 15 U.S.C. § 1640 (a)(2)(A)(iv);

c. Return of the vehicle's sales price and all incidental and consequential damages incurred by Plaintiff;

d. Return of all principal paid towards the Vehicle purchase;

e. Prejudgment interest at the prime rate as of the date of this cause of action;

f. All reasonable attorney fees, witness fees and costs, all court costs and other fees incurred by Plaintiff, and such other and further relief that the Court deems just and appropriate.

Dated: Long Island City, New York
       July 22, 2014

                                        KASELL LAW FIRM

                                         /s/
                                        _____
                                        David M. Kasell (DK-7753)
                                        1038 Jackson Avenue, #4
                                        Long Island City, NY 11101
                                        (718) 404-6668